DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, The Danis Companies, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting permanent total disability ("PTD") compensation to respondent, John Howard ("claimant"), based upon relator's contention Relator, that the commission abused its discretion in allocating 20 percent of the PTD award to claim No. 788714-22, and 15 percent to claim No. 841933.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator asserts that the record is devoid of any evidence to support allocating 35 percent of the PTD award to two claims arising out of claimant's employment with relator. Relator maintains that claimant's disability is solely caused by the conditions in claim No. 78-53393, relating to physical and psychological injuries claimant suffered while working for a previous employer, Weigle Engineering Company ("Weigle"). Relator further argues that the magistrate erred in finding that the commission properly allocated claimant's PTD award based upon claimant's permanent partial impairment ratings. Finally, relator argues that the commission's order fails to meet the requirements of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 4} Although relator contends that claimant's injuries, while under its employ, play no role in his current disability, part of the evidence relied upon by the commission included the report of Dr. Joseph Kearns, who opined that the knee and chemical burn injuries claimant sustained during his employment with relator have resulted in residual problems. More specifically, Dr. Kearns, who stated that claimant would not be able to engage in unrestricted work due to the fracture of the knee and skin burns, assigned a "7% whole person permanent partial impairment rating" to the knee condition, noting that, because of such injury, claimant's work activity should involve a limit on walking, and that claimant should engage in "no squatting, kneeling, or work at floor level." As to claimant's burn injury, Dr. Kearns assigned a "5% whole person permanent partial impairment" rating. Based upon the report of Dr. Kearns, there was some evidence that claimant suffers from specific residual disability attributable to the two claims arising out of his employment with relator.
 {¶ 5} As noted, relator also contends that the commission erred in its allocation of claimant's PTD award. In the present case, the commission was faced with multiple allowed claims involving two employers, and the commission allocated 65 percent of the PTD award to claimant's injuries associated with Weigle, while allocating 35 percent of the award to claimant's injuries while employed with relator. As noted by the magistrate, the commission indicated that, in deriving an allocation percentage, it relied upon medical evidence provided by Drs. Kearns, Michael Murphy and Michael Corriveau. Regarding claimant's injuries with relator, there was medical evidence that claimant suffered a five percent impairment for the burns and a seven percent impairment for injuries to his knee. As to injuries sustained by claimant while employed by Weigle, there was medical evidence that claimant suffered ten percent impairment for the allowed respiratory conditions and 12 percent impairment for the allowed psychological conditions, resulting in a 22 percent impairment assessment for those injuries.
 {¶ 6} Relator's argument that the commission improperly allocated the PTD award between relator and Weigle is predicated in part upon relator's contention, addressed and rejected above, that claimant no longer suffers any disability from the injuries arising out of claimant's employment with relator. Here, the commission apportioned the award based upon medical evidence as to the percentages of impairment causally related to the different work injuries, and we find unpersuasive relator's contention that it was penalized merely because claimant has allowed claims with relator. Upon review, we find that the commission cited the evidence relied upon, and that there was a basis upon which the commission could have arrived at the percentage allocations. Because the record contains some evidence to support allocation of 35 percent of the award to the two claims associated with relator, we find that the commission did not abuse its discretion in its determination. State ex rel.Yellow Freight Sys., Inc. v. Indus. Comm. (1994),71 Ohio St.3d 139.
 {¶ 7} Finally, we agree with the magistrate's determination that the commission's order contains a sufficient explanation and that it is not contrary to the requirements of Noll, supra.
 {¶ 8} Upon examination of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we overrule the objections and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
Bowman and McCormac, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
In Re: : State ex rel. The Danis Companies, : Relator : v. : No. 03AP-1022 The Industrial Commission of Ohio : (REGULAR CALENDAR) and John Howard, : Respondents. :
 MAGISTRATE'S DECISION Rendered on March 24, 2004 Dunlevey, Mahan Furry, and Gary T. Brinsfield, for relator.
Jim Petro, Attorney General, and Jacob Dobres, for respondent Industrial Commission of Ohio.
Stanley R. Jurus Law Offices, and Robert M. Robinson, for respondent John Howard.
 IN MANDAMUS {¶ 9} In this original action, relator, The Danis Companies, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to respondent John Howard ("claimant") because the commission abused its discretion in allocating 20 percent of the PTD award to claim number 788714-22 and 15 percent to claim number 841933-22, both of which involve relator herein.
Findings of Fact:
 {¶ 10} 1. Claimant has sustained three separate work-related injuries in the present case, two of those injuries occurred while claimant was employed by relator. Claimant's claims have been allowed as follows:
[841933-22] Burns to face, head, hands, and neck. [Employer, relator herein.]
Claim #78-53393 has been recognized for "respiratory inhalation by breathing gas; aggravation of pre-existing anxiety disorder." [Employer, Weigle Engineering Company ("Weigle")]
Claim #788714-22 has been recognized for "avulsion fracture of right knee." [Employer, relator herein.]
 {¶ 11} 2. The record contains the February 1, 2001 report of Joseph Kearns, D.O., who conducted an independent medical evaluation regarding claim numbers 841932-22 and 788714-22, both of which occurred during claimant's employment with relator. Dr. Kearns concluded that claimant had reached maximum medical improvement with regard to the allowed conditions in both of these claims. Dr. Kearns specifically noted further as follows: "He does have some residual problems in terms of the burn. The exact chemical involved in the burns is not clear." Dr. Kearns assessed a seven percent whole person impairment with regard to claimant's right knee condition and a five percent whole person impairment with regard to claimant's burns. As such, Dr. Kearns assessed a 12 percent whole person permanent partial impairment rating for all of the allowed conditions claimant sustained while working for relator. With regard to claimant's ability to perform other sustained remunerative employment, Dr. Kearns concluded that claimant could perform medium work and noted the following:
* * * In regards to only the fracture of the knee and the skin burns on the above two listed claims, it would appear that he would not be able to do his unrestricted duty, but he should be able to do some restricted duty per the physical evaluation sheet. This would primarily be to limit his walking and have no squatting, kneeling, or work at floor level.
 {¶ 12} 3. The record also contains the March 13, 2001 report of Michael A. Murphy, Consulting Psychologist, who conducted an evaluation for the commission. Dr. Murphy examined relator solely with regard to the allowed psychological conditions in claim number 78-53393, which claimant sustained while working for Weigle. Dr. Murphy ultimately assessed a 12 percent permanent partial impairment with regard to the allowed psychological conditions and concluded that, based solely upon the allowed psychological conditions, claimant could both return to his former position of employment as well as return to any other employment for which he was otherwise capable.
 {¶ 13} 4. The record also contains the March 29, 2001 report of Michael L. Corriveau, M.D., a pulmonary specialist. Due solely to the claim involving respiratory inhalation by breathing gas, claim number 78-53393, which claimant sustained while employed by Weigle, claimant had a ten percent impairment. Claimant filed an application for PTD compensation on October 10, 2000.
 {¶ 14} 5. Claimant's application for PTD compensation was heard before a staff hearing officer ("SHO") on December 18, 2001, and resulted in an order granting the requested compensation. Based upon the medical reports of Drs. Kearns, Murphy and Corriveau, the SHO concluded that claimant retained the physical ability to perform sedentary or light duty sustained remunerative employment. The SHO then determined how the award should be allocated as follows:
Permanent and total disability compensation is ordered to begin effective 10/10/2000, the date of filing of this application based on the above rationale. The award is ordered paid as follows:
65% in claim number 78-53393; 20% in claim number 788714-22; and 15% in claim number 841933-22.
This allocation is based on an extrapolation of the permanent partial impairment ratings provided by Drs. Kearns, Murphy and Corriveau. All relevant evidence was reviewed and considered in reaching this determination.
 {¶ 15} 6. Relator's request for reconsideration was denied by order of the commission mailed March 28, 2002.
 {¶ 16} 7. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 17} Relator does not contest claimant's entitlement to PTD compensation. Instead, relator challenges the commission's decision to allocate 15 percent of the award to claim number 841933-22, involving the injury to the right knee, and 20 percent of the award to claim number 788714-22, involving the burns to claimant's face, head, hands and neck. Relator asserts that the commission abused its discretion by attributing any responsibility to those claims and, further, that the commission's order violates the requirements of State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, because the SHO failed to explain the basis for assigning 35 percent of the responsibility for claimant's PTD award to relator herein. For the reasons that follow, this magistrate disagrees.
 {¶ 18} In the present case, when the commission made its determination allocating the PTD award, the commission specifically noted that its determination was made based upon the permanent partial ratings provided by Drs. Kearns, Murphy and Corriveau. As noted previously, Dr. Kearns attributed a five percent impairment for the burns sustained by claimant and a seven percent impairment for the injuries sustained to his knee. Those claims occurred while claimant was employed by relator. Drs. Murphy and Corriveau assessed a ten percent impairment for claimant's allowed respiratory conditions and a 12 percent impairment for claimant's allowed psychological conditions. Those combine for a 22 percent impairment for the injures claimant sustained while employed by Weigle. The SHO indicated that he "extrapolated" the allocation of the PTD award based upon the permanent partial ratings provided by the above doctors. The word "extrapolate" is defined to mean "to infer * * * from values within an already observed interval." Merriam-Webster, Ninth New Collegiate Dictionary (1987) 441. Basically, based upon the percentage of permanent partial impairment provided by the doctors, the SHO projected the percentages to allocate the PTD award. In doing so, this magistrate specifically notes that the SHO maintained the same interval and properly explained how the award was being allocated. Taking 100 percent as the total sum needed to award PTD compensation, and projecting the percentage attributed to a claim where the doctors assign a 22 percent impairment, one arrives at a figure of 66 percent. The SHO attributed 65 percent of the PTD award to claim number 78-53393 wherein the doctors had assessed a 22 percent whole person impairment. One hundred percent minus 65 percent leaves 35 percent of the allocation which the SHO divided between the five percent and seven percent permanent partial impairment ratings. As such, this magistrate finds that not only did the SHO properly determine the allocation based upon the medical evidence, but, that, the commission's order constitutes a sufficient explanation and met the requirements of Noll.
 {¶ 19} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in allocating claimant's award for permanent total disability compensation and relator's request for a writ of mandamus should be denied.
 /s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE